■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v LOUIS RIVERA, True Name JOACHIM LOPEZ, Respondent. — Order, Supreme Court, New York County (Carol Berkman, J.), entered June 7, 1983, *sua sponte* dismissing the indictment charging defendant with burglary in the third degree (Penal Law, § 140.20) on the ground that his CPL 30.30 right to a speedy trial had been violated, unanimously reversed, on the law, the indictment reinstated and the matter remanded to said court for further proceedings.

On February 25, 1981, defendant was arrested for burglary and, at arraignment, gave a false name (Louis Rivera), a false date of birth, a nonexistent address and falsely stated that he had no prior criminal record. Although fingerprints were taken and transmitted to the Division of Criminal Justice Services (DCJS), the prints were rejected as illegible for classification since the quality of the reproduction was poor. He was indicted on March 4, 1981 and released on bail six days later but failed to appear on March 20 and April 10, 1981, whereupon a bench warrant was issued. A search by warrant officials, which was extensive, proved unsuccessful as a result of the nonexistent address furnished by defendant.

On May 4, 1982, defendant was arrested on an unrelated narcotics charge and again furnished authorities with a false name (Jose Rodriguez) and a different address. His fingerprints were classified by DCJS and reflected an extensive criminal history but did not disclose any record of the 1981 burglary arrest. On September 7, 1982, he pleaded guilty to criminal sale of a controlled substance in the fifth degree and was sentenced to a term of 2 to 4 years. He was transferred to the State correctional system on September 13 and new fingerprints were forwarded to DCJS and to the FBI. The FBI report disclosed defendant's criminal history, including the open 1981 burglary charge and warrant. According to appellant, its receipt of this

report on October 27, 1982 was the first notice which it had of the outstanding 1981 charge and warrant. An order to produce defendant was served upon the correctional facility on April 8, 1983.

When defendant appeared in court on April 18, 1983, the Judge *sua sponte* raised compliance with CPL 30.30 as an issue, observing that defendant had been incarcerated for more than six months and adjourned the matter for a hearing as to due diligence. On the adjourned date, without holding a hearing, the court dismissed the indictment, finding that there had been 212 days, approximately seven months of delay time, chargeable to the People. In reaching that determination, the court did exclude the period from defendant's 1981 arrest and flight until his arrest on May 4, 1982. However, with respect to the period from the arrest in May, 1982 until defendant was transferred to the State correctional system on September 13, 1982, it was concluded that the prosecution did not act diligently in failing to request records from the FBI after the May, 1982 arrest and in previously failing to discover his prior record in 1981. The court found that one half of the total time, or 66 days, was to be chargeable to the People, with the balance chargeable to defendant by reason of his having given false information. As to the period from September 13, 1982 until April 8, 1983, when defendant was produced, the court excluded one month as a reasonable time to request information from the FBI and an additional month to secure an order, charging the People with the remainder (146 days).

We disagree with the trial court and conclude that the entire period from May 4 to September 13, 1982 should have been excluded. CPL 30.30 requires that the People be ready for trial within six months of commencement of a felony prosecution but excludes delay resulting from "the absence" of the defendant. Here, defendant was clearly absent during the period from when he absconded in 1981 until his arrest in May, 1982. At that time, he again provided the authorities with intentionally misleading information, using a false name and birthdate and a nonexistent address.

The record reflects a concerted pattern of deception, establishing that, since 1970, defendant has used 14 different names, six different dates of birth, five different Social Security numbers and 12 different addresses. The delay was occasioned by his own conduct, palpably calculated and designed to avoid prosecution for the prior crime (see *People v Camarda,* 54 AD2d 567; *People v Manley,* 63 AD2d 988; *People v Rivera,* 63 AD2d 972). While, in part, the failure to ascertain defendant's identity as the person

involved in the open 1981 charge resulted from the inability of DCJS to classify the 1981 fingerprints due to their illegibility, we find persuasive the outright deceit practiced by this defendant over an extensive period of time, using false names and identities in an attempt to avoid responsibility for past criminal activity (see *People v Velez,* 124 Misc 2d 612). On that basis, *People v Scott* (56 AD2d 667) is distinguishable since there, defendant had been "lost in the system" and, for that reason, was not produced, the court attributing to the prosecution the failure of the Department of Correctional Services to locate him. In our case, however, like the situation in *People v Camarda* (*supra*), where there was a three-year delay attributable to the confusion engendered by defendant's incarceration under a false name, the delay should not have been charged to the People. As observed by the trial court, although there may have been resulting prejudice to defendant since he lost the opportunity to negotiate a joint plea or a concurrent sentence, he has only himself to blame in deliberately failing to disclose his correct name, address and other particulars. He cannot be rewarded for his devious actions. Concur — Sullivan, J. P., Ross, Bloom, Fein and Kassal, JJ.