OPINION OF THE COURT
Caesar Cirigliano, J.
The defendant’s motion for an order dismissing this criminal action on statutory speedy trial grounds raises a question of apparent first impression: Is the due diligence requirement of CPL 30.30 (4) (c) satisfied where the warrant officer made initial routine inquiries over a two-month period in an effort to locate the defendant but took no action whatsoever over the ensuing 11 months to follow up on this investigation?
The People contend that the period during which the warrant was outstanding should be excluded in its entirety pursuant to CPL 30.30 (4) (c) because the initial inquiries made by the warrant officer satisfied the due diligence standard. The defense argues that the warrant squad’s practice of filing a warrant once initial leads have been exhausted and making no follow-up investigation unless a member of the public comes to them with information does not comport with the due diligence standard and urges that most, if not all, of this period should be charged to the People. The People counter that the procedure followed by the warrant squad is necessitated by the fact that this division has limited resources.
As discussed more fully below, I hold that the warrant officer’s initial efforts to execute the warrant do not compensate for the fact that she did nothing further once her initial investigation was complete. To find that such inaction satisfies the due diligence standard is to condone a practice that denies the public its right to the prompt and effective prosecution of individuals charged with serious crimes. Accordingly, I hold that due diligence was not exercised during that 11-month period. Nor have the People met their burden of establishing that the defendant was attempting to avoid apprehension or prosecution during that period. Consequently, the defendant’s motion to dismiss the indictment is granted.
PROCEDURAL BACKGROUND
Defendants, Gregory Garrett, Fred Ellis and Maria Foster, were charged with robbery in the first degree and related *921 offenses stemming from an incident that occurred on January 5, 1988. The charges against Fred Ellis and Maria Foster were dismissed by Judge Heller on speedy trial grounds on October 23rd and December 14th of 1989, respectively. This case commenced on January 7, 1988, the date defendant was arraigned on the felony complaint. The defendant was subsequently released on his own recognizance on January 11, 1988. On January 26, 1988 the defendant failed to appear for arraignment on the indictment and on February 18, 1988 a bench warrant issued. On April 24, 1989, the defendant was returned on the warrant and arraigned on the instant indictment. On November 3, 1989, defendant brought this speedy trial motion before Judge Heller and on January 11, 1990, this case was transferred to me. On January 23, 1990 I conducted a hearing.
THE LEGAL STANDARD
GPL 30.30 requires dismissal of an indictment if the People are not ready for trial within six calendar months of the commencement of a felony prosecution. Here, the People were required to be ready for trial within 182 days. The statute, however, provides that certain periods are to be excluded in computing the six-month time period. The provision that controls the determination here is GPL 30.30 (4) (c) which was amended in 1984 (L 1984, ch 670) to read as follows:
"4. In computing the time within which the people must be ready for trial pursuant to subdivisions one and two, the following periods must be excluded * * *
"(c) The period of delay resulting from the absence or unavailability of the defendant or, where the defendant is absent or unavailable and has either escaped from custody or has previously been released on bail or on his own recognizance, the period extending from the day the court issues a bench warrant pursuant to section 530.70 because of the defendant’s failure to appear in court when required, to the day the defendant subsequently appears in the court pursuant to a bench warrant or voluntarily or otherwise. A defendant must be considered absent whenever his location is unknown and he is attempting to avoid apprehension or prosecution, or his location cannot be determined by due diligence. A defendant must be considered unavailable whenever his location is known but his presence for trial cannot be obtained by due diligence”. (Emphasis added to highlight the language of the amendment.)
*922 This amendment has spawned much controversy and the lower courts are split as to its import. In construing this amended provision, I hold with what appears to be the majority view and find that the provision, as amended, continues to require the People to demonstrate the absence or unavailability of a defendant who has bench warranted in order for the time period to be excluded. (See, e.g., People v Gaston, NYLJ, Mar. 22, 1988, at 13, col 3 [Sup Ct, NY County]; People v Surita, 137 Misc 2d 794 [Crim Ct, Bronx County 1987].)
Thus, the time in which the People must be ready for trial will be deemed to have been tolled during the period that the bench warrant was outstanding only if the People are able to demonstrate the absence of the defendant. The People can succeed on this motion by showing either that they exercised due diligence in their efforts to locate the defendant or by showing that the defendant was attempting to avoid apprehension or prosecution. (People v Jackson, 142 AD2d 597, 598 [2d Dept 1988].) I address each of these considerations in turn.
due diligence: findings and conclusions
At the hearing conducted before me, the People sought to establish that due diligence was exercised in the effort to locate the defendant. The only witness called by the People was Police Officer Kathleen Christoff of the Brooklyn Warrant Squad. The defense called no witness. I find Officer Christoffs testimony to be credible and the following facts to be established.
The warrant was ordered on February 18, 1988. Officer Christoff received the warrant on March 14, 1988, 25 days after it was ordered.
Ten days later, on March 24th, she obtained the defendant’s last known arrest report. The next day she checked the Coles directory and found no listing for the defendant, but did find that the telephone number listed on the arrest report belonged to the defendant’s grandmother, Mrs. Bradley, of 324 Montgomery Street. On March 28th she requested a postal check for 324 Montgomery Street, but did not testify to the results of that query. She also checked with the Correction Department and learned that the defendant was not incarcerated. On March 29th the court computer indicated that the warrant was still active.
Two weeks later, on April 13, 1988, Officer Christoff paid a visit to the defendant’s grandmother, Mrs. Bradley, who told *923 her that she had not seen the defendant for the past two months. She searched the apartment and the defendant was not there. She left her card with the defendant’s grandmother, who provided her with a telephone number for the defendant’s mother. On April 29, 1988, Officer Christoff found that the defendant was not listed in the Department of Motor Vehicles computer.
Two weeks later, on May 13, 1988 she checked the warrant on line file system and found that the defendant had no previous cases and checked with the court computer which indicated that the warrant was still active. On May 17, 1988, she visited 324 Montgomery Street and interviewed the resident of apartment 9-d who told her that the defendant had moved in February of 1988 and has not been seen since. On May 19th Officer Christoff visited the codefendant’s aunt who told her that she did not know the defendant. On May 23, 1988, she spoke with the defendant’s mother who told her that she had not seen the defendant for the past seven months and did not know where the defendant was living. Officer Christoff checked with corrections and found that the defendant was not incarcerated. On May 24, 1988, Officer Christoff visited 209 Sullivan Place and spoke with the superintendent who told her that the codefendant did not live there and that the defendant was not known to him.
On May 24, 1988, her initial leads exhausted, Officer Chris-toff requested that the warrant be filed pending further investigation and received permission to do so. Thereafter, for a period of 11 months between May 24, 1988 and April 24, 1989 when the defendant was arrested on another charge and returned on this warrant she did nothing further.
Officer Christoff, who had spent two years on the Brooklyn Warrant Squad, had worked on more than 700 warrants during this time period, and had received training in investigative techniques, explained why she did nothing for those 11 months: "What we are required to do is follow the format of visiting the address, visiting any address that we can obtain, checking the phone numbers that we obtain from the arrest report, find the locations they are listed to, making a visit there and interviewing the people. That is basically it. Basically, after we follow these steps, if there is no additional information, we classify the case TPFF (filed pending further investigation).” Since Officer Christoff "never received any additional information or phone calls from the family stating where he was or from the defendant himself,” she made no *924 further efforts in the ensuing 11 months to locate the defendant.
The term "due diligence” has been defined as "Constancy or steadiness of purpose or labor by men who desire a speedy accomplishment of their purposes and such assiduity in the prosecution of the enterprize as manifest to the world a bona fide intention to complete the task within a reasonable time.” (Ballentine’s Law Dictionary 380 [3d ed 1969].) Interestingly, in Scots law, diligence is the very name given to "the warrant issued by a court for enforcing the attendance of witnesses or the production of writings.” (Webster’s Deluxe Unabridged Dictionary 511 [2d ed 1983].)
To call the warrant that issued here a "diligence” would be a misnomer. It did not reach the hands of the officer who was to execute it for a period of 25 days after it was ordered. An additional period of 10 days elapsed before she began to make any inquiries. This unexplained delay of 35 days is charged to the People. (People v Fuggazzatto, 62 NY2d 862, 863 [1984].)
Thereafter, for a two-month period, the officer made sporadic attempts to locate the defendant by pursuing various avenues of inquiry every two weeks or so. However, such efforts have been deemed a sufficient showing of due diligence and I do not find otherwise. (See, e.g,, People v Jackson, 150 AD2d 609 [2d Dept 1989], lv denied 74 NY2d 811; People v Macklowe, 131 AD2d 785 [2d Dept 1987], lv denied 70 NY2d 705.) Accordingly, the period of 61 days from March 24, 1988 when the officer first attempted to execute the bench warrant through May 24, 1988 when the warrant was filed are excluded.
However, this initial exercise of due diligence hardly compensates for the warrant officer’s complete failure to take any action whatsoever for the nearly one-year period following May 24, 1988. The case law in this area generally speaks to situations where the police initially did very little or nothing to execute the warrant and later made adequate efforts to apprehend the defendant. The decisions hold that belated efforts to execute a warrant do not cure the failure to do nothing initially. (See, People v Franks, 134 AD2d 888, 889 [4th Dept 1987] ["minimal efforts exercised in the fall of 1983 and complete lack of any activity for 11 months of 1984 fail to constitute due diligence in attempting to locate defendant”]; People v Roy, 102 AD2d 876 [2d Dept 1984] [due diligence not established where "no further efforts to execute the warrant *925 (after an initial attempt was made) until * * * over one year later”]; see also, People v Pacheco, 145 AD2d 511 [2d Dept 1988]; People v Beltran, 88 AD2d 830 [1st Dept 1982].)
There is, in my view, no meaningful difference between these circumstances and the facts at bar. Whether an officer does nothing initially or does nothing ultimately to attempt to apprehend a defendant does not alter the fact that he has done nothing and cannot be deemed diligent in his efforts. Indeed, in accordance with the procedures instituted in her office, the warrant officer would have done nothing further, after filing the warrant, no matter now much time had elapsed unless some member of the public had come to her with information, or, as here, unless the defendant was arrested on another charge and returned on the warrant.
The prosecutor contends that the period in which nothing was done to execute the warrant should be excused because the warrant squad has limited resources and a large caseload. I recognize that practical considerations make it unrealistic to expect the warrant squad to conduct extensive follow-up investigations on each and every warrant ordered. However, it is not unreasonable to expect the warrant squad to intelligently allocate its resources so that, at the very least, some nominal follow-up effort is made to apprehend individuals charged with serious crimes. (Cf., People v Peterson, 115 AD2d 497 [2d Dept 1985] [suggesting that surveillance of the defendant’s known addresses over the two-year period in question would have been appropriate].) Here, no attempt, nominal or otherwise, was made for a period of 11 months to execute a warrant that called for the apprehension of a defendant charged with a violent felony offense. There is simply no principled basis upon which to excuse this lengthy period of inactivity and I decline to do so.
Sound policy reasons mandate this conclusion. The interests of the public as well as of the accused are best served when criminal charges are speedily tried. As the Court of Appeals has recognized, "society too has an interest in seeing that those accused of crimes are swiftly brought to justice * * *. Unless criminal accusations are promptly tried, those disposed to crime can always hope to beat the system by pleading to a lesser offense, those indicted for crimes are left at large for long periods perhaps to further menace the community and those convicted of crimes are often sent to correctional institutions long after the time for meaningful rehabilitation has passed. * * * Thus the speedy trial requirement not only *926 ensures fair and humane treatment of the accused, but serves, as well, to promote the efficiency of the criminal justice system.” (People v Johnson, 38 NY2d 271, 276 [1975]; see also, People v Anderson, 66 NY2d 529, 534-535 [1985]; People v Blakley, 34 NY2d 311, 314 [1974]; People v Mincione, 28 NY2d 279, 281 [1971].) A finding of due diligence here would encourage a practice of filing and forgetting warrants lodged against individuals charged with serious crimes to the detriment of these salutary societal goals and values.
I cannot in good conscience countenance such a practice and accordingly charge the People with the 366 days during which no attempt whatsoever was made to execute this warrant.
ATTEMPT TO AVOID APPREHENSION AND prosecution: findings and conclusions
Cognizant, perhaps, of the deficiencies in their proof of due diligence, the People urge, as their principal contention, that the defendant was attempting to avoid apprehension or prosecution during this period. The People rely upon the sworn allegations of fact in their motion papers, which were not controverted, to sustain their burden of establishing that the defendant’s location was unknown and he was attempting to avoid apprehension or prosecution. I summarize them in pertinent part and find as follows.
On January 5, 1988, the defendant was arrested. On January 7, 1988, the defendant was arraigned on a felony complaint charging him with robbery in the first degree and other offenses. On January 11, 1988, the defendant was released on his own recognizance. On January 15, 1988, indictment number 204/88 was filed charging the defendant with robbery.
On January 20, 1988, "a letter was sent to defendant by the Kings County Clerk’s Office notifying defendant of his arraignment in ACA 360 on January 26, 1988.” There is no indication of the address to which this letter was mailed. On January 26, 1988, the defendant was not present for his arraignment in ACA 360 and the case was put over until February 18, 1988. The People do not aver that notice of this adjourned date was sent to the defendant.
On February 17, 1988, superseding indictment No. 1052/88 was filed. On February 18, 1988, the defendant did not appear for arraignment in ACA 360 and a bench warrant was ordered on the superseded indictment numbered 204/88. On February *927 22, 1988, the defendant did not appear for his arraignment on the superseding indictment and a bench warrant was ordered on that indictment. Again, the People did not aver that notice of his arraignment on the superseding indictment was sent to the defendant.
On February 10, 1989, more than one year after his scheduled arraignment on the initial indictment, the defendant was given a desk appearance ticket for criminal trespass in the third degree and used the name Alonso Lopez. On March 15, 1989, the defendant was arraigned on this desk appearance ticket and was not returned on the warrant.
On March 29, 1989, a second superseding indictment, No. 1466/89, was filed in this case. Again, there is no averment that notice of his arraignment on this superseding indictment was sent to the defendant. The defendant did not appear on April 6,1989 in ACA 360 for his arraignment on the superseding indictment and a bench warrant was ordered. On April 20, 1989, the defendant was arrested for criminal sale and possession of a controlled substance and used the name Alonzo Bradley. On April 24,1989, the defendant was returned on the warrant in ACA 360 and was arraigned on the second superseding indictment numbered 1466/89. At this time the People announced ready.
The People contend that the defendant’s failure to appear for his scheduled arraignments on three occasions and his use of aliases on two occasions suffice to demonstrate his attempt to avoid apprehension or prosecution and consequently the time period involved should be excluded. I disagree.
This is not a case where the defendant was in court and was told exactly when and where to appear and then failed to do so. (See, e.g., People v Jackson, 150 AD2d 609, supra; People v Jackson, 142 AD2d 597, supra.) It is therefore essential that the evidence sufficiently demonstrate that the defendant had adequate notice of a scheduled court appearance before his absence can be deemed a conscious and deliberate attempt to avoid prosecution. (See, People v Peterson, 115 AD2d 497, 498 [2d Dept 1985], supra ["There is no indication in the record that the defendant was attempting to avoid apprehension on the instant charge since admittedly he was never notified as to this indictment until his arrest”]; People v Rivera, 63 AD2d 972 [2d Dept 1978] [where defendant used 12 different addresses and 10 different names due notice of arraignment was sufficiently established through the testimony of the supervis *928 ing clerk and other personnel that mail had been sent to the defendant’s last known address and had not been returned as " 'undelivered’ ” by the post office].)
Here, the People do not even make the bare assertion in their affirmation that letters advising the defendant of his arraignments on the first and second superseding indictments were mailed. Thus, it is not three court appearances, but one court appearance that is in issue here. As to that appearance, the People in their affirmation state that a form letter was mailed to defendant, but there is no indication of the address to which it was sent. Certainly, information concerning the address to which this letter was sent is a basic prerequisite to a finding of adequate notice. (Cf., People v Macklowe, 131 AD2d 785 [2d Dept 1987], supra [notices sent to the defendant’s father’s address]; People v Taylor, 127 AD2d 714 [2d Dept 1987], lv denied 71 NY2d 974 [notices sent to defendant’s last known address]; People v Orse, 118 AD2d 816 [2d Dept 1986] [same].)
To infer due notice and thus actual knowledge of a scheduled court appearance from the mailing of a single letter to an unspecified address is simply not reasonable. Under these circumstances, it can hardly be said that the defendant’s failure to appear for arraignment in this case " 'strongly suggests an attempt to avoid * * * prosecution’ ”. (People v Jackson, 150 AD2d 609, 610, supra.)
Since notice of his arraignment on the original indictment may never have reached the defendant, his use of two aliases nearly one year later is simply too tenuous a showing upon which to premise a finding that he consciously attempted to avoid apprehension and prosecution for these robbery charges. Indeed, courts passing upon this question have generally required far more than this to substantiate this conclusion. (See, e.g., People v Jackson, 142 AD2d 597, supra [defendant fled the courtroom before his arraignment and when subsequently arrested and convicted in another State spent 40 months in jail under his brother’s name]; People v Walker, 133 AD2d 2 [1st Dept 1987] [defendant, who used an alias, was aware of the fact that he was a parole violator having disobeyed his parole officer’s instructions which were delivered personally, and indeed admitted that he was continuously attempting to avoid execution of the parole violation warrant and by inference prosecution upon the charges in issue]; People v Rivera, 106 AD2d 278, 279 [1st Dept 1984] [defendant used 14 different names, 6 different dates of birth, 5 different *929 Social Security numbers, and 12 different addresses]; see also, People v Johnston, 111 AD2d 262, 263 [2d Dept 1985] [upon the defendant’s arrest, the defendant boasted to the police, "It took six years for them to catch me”].)
I therefore, hold that the People did not meet their burden of establishing that the defendant attempted to avoid apprehension or prosecution.
The defendant’s motion to dismiss this indictment is granted.