(March 8, 1994)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KENNY LADSON, Appellant. [608 NYS2d 966] —Judgment, Supreme Court, New York County (Joan Carey, J.), rendered June 30, 1992, convicting defendant, after a jury trial, of criminal possession of a weapon in the third degree, and sentencing him as a second felony offender to a term of from 2 to 4 years imprisonment, affirmed.

Defendant was not denied his statutory right to a speedy trial. His failure to return to court following his arraignment and parole, and his deliberate effort to conceal his identity and deceive the court and law enforcement personnel by providing false information both before and after a bench warrant issued for his nonappearance, reveal his intent to avoid apprehension and prosecution on this charge. These factors seem sufficient to us to distinguish this case from *People v Bolden* (81 NY2d 146), cited by the dissent. We thus

hold that defendant was "absent" within the meaning of CPL 30.30 (4) (c) for the period from May 14, 1990 to September 4, 1991, and it was therefore properly excluded as time chargeable to the People despite the admittedly minimal showing of prosecutorial diligence in bringing defendant to justice *(People v Patterson,* 38 NY2d 623; *People v Walker,* 133 AD2d 2). And while deceit was a significant part of the factual mix in *People v Barasso* (193 AD2d 448, *lv denied* 81 NY2d 1070), we would note that the defendant in that case had been incarcerated and demonstrably subject to the People's control for a full year, in contrast to the few days preceding defendant's improvident release herein.

Defendant's contention that the police officer's forcible stop and frisk was constitutionally impermissible is without merit. The police officer arrived at the scene of a shooting and was told by a civilian eyewitness that defendant, who was walking away, possessed a weapon. Accordingly, the officer reasonably believed that defendant was armed, had committed a crime, presented a danger and was fleeing. The officer was thus justified in stopping and frisking defendant *(People v Benjamin,* 51 NY2d 267; *People v De Bour,* 40 NY2d 210).

We have considered defendant's remaining claims and find them to be without merit. Concur—Wallach, Kupferman and Tom, JJ.

Murphy, P. J. and Asch, J., dissent in a memorandum by Murphy, P. J., as follows: On April 27, 1990, defendant, whose full name is Joseph Kenny Ladson, was arrested in the 28th Police Precinct for criminal possession of a weapon. At the time of the arrest, defendant identified himself as "Kenny Ladson". Although he possessed a criminal record dating from 1977, the record was not obtained and he was charged as a first offender and assigned a new NYSID number. Following his arraignment on April 28, 1990, the defendant was released on his own recognizance. When he failed to appear in court on May 14, 1990, a bench warrant was issued.

On June 9, 1990, defendant was again arrested in the 28th Precinct, this time for unrelated misdemeanors. He identified himself on the occasion of this arrest as "Joseph Ladson" and supplied pedigree information differing in some respects from that given by him at the time of the April 27 arrest. A computer search employing defendant's name and physical and numeric descriptors, but not his fingerprints, failed to disclose the existence of the May 14 bench warrant. Defendant was, accordingly, arraigned and on June 10, 1990 again released upon his own recognizance.

More than one year later, on August 21, 1991, the defendant was arrested in Bergen County, New Jersey. Although he presented himself on the occasion of this arrest as "Ken Ladson", the New Jersey authorities were not thereby prevented from identifying him as the subject of the outstanding May 14, 1990 bench warrant and he was thereafter returned to New York for trial. Prior to the trial, which commenced on June 8, 1992, the defendant, claiming that some 16 of the 25½ months which had passed since his arraignment were chargeable to the People, moved pursuant to CPL 30.30 for dismissal of the indictment upon the ground that he had been denied his right to a speedy trial. The motion was denied and it is the propriety of that denial which is at issue upon this appeal from the subsequently rendered judgment of conviction.

It is the People's position on this appeal, as it was in the motion court, that in computing whether they met their obligation to be ready for trial within six months of the commencement of the prosecution (CPL 30.30 [1] [a]), they should not be accountable for the time between the May 14, 1990 bench warrant and the August 21, 1991 Bergen County arrest. This claim is made in reliance upon CPL 30.30 (4) which provides in relevant part that:

"In computing the time within which the people must be ready for trial * * * the following periods must be excluded * * *

"(c) the period of delay resulting from the absence or unavailability of the defendant or, where the defendent is absent or unavailable and has either escaped from custody or has previously been released on bail or on his own recognizance, the period extending from the day the court issues a bench warrant pursuant to section 530.70 because of the defendant's failure to appear in court when required, to the day the defendant subsequently appears in the court pursuant to a bench warrant or voluntarily or otherwise. A defendant must be considered absent whenever his location is unknown and he is attempting to avoid apprehension or prosecution, or his location cannot be determined by due diligence. A defendant must be considered unavailable whenever his location is known but his presence for trial cannot be obtained by due diligence".

The Court of Appeals has recently had occasion to consider whether this provision may be read to relieve the People of the obligation to exercise due diligence in securing a defendant's presence in situations where the defendant, having

failed to make a required court appearance, has become the subject of a bench warrant. Although some courts had understood the statute to eliminate the due diligence requirement in such circumstances and, accordingly, to allow the People to exclude time solely by reason of a bench warrant's issuance, the Court in *People v Bolden* (81 NY2d 146, 155) held squarely to the contrary, observing that "both the legislative history and the unambiguous language of CPL 30.30 (4) (c) point inexorably to the conclusion that prosecutorial diligence in locating the defendant and/or securing his presence must be shown in order to invoke the exclusion for periods when the defendant was 'absent' or 'unavailable' and a bench warrant for his apprehension was outstanding".

While the People do not, and on this record could not, argue that they were diligent in their efforts to return the defendant to court, they nevertheless claim that they may exclude the time during which the May 14, 1990 bench warrant was outstanding because, during that period, "the defendant's location was unknown and he was attempting to avoid apprehension or prosecution," rendering him "absent" within the meaning of the statute.

As is confirmed in *People v Bolden (supra,* at 152, n 1), the last-cited definitional language does indeed permit the People to establish "absence" without regard to prosecutorial diligence. A showing of due diligence is presumably excused in circumstances coming within the cited definitional language in recognition of the fact that there are cases in which the failure to return the defendant to court is more aptly to be attributed to the efforts, and indeed success, of the defendant at avoiding capture, than any indiligence on the part of the People. Plainly, however, this provision was not intended entirely to supplant the due diligence requirement which, as *Bolden* makes clear, otherwise obtains as a condition of establishing a defendant's "absence" or "unavailability". Accordingly, the People's satisfaction of the statutory criteria must be carefully evaluated to assure that the requirement of due diligence is not being dispensed with in circumstances where reasonable efforts to locate and apprehend the defendant would likely have been efficacious. In this regard, it is critical that when the People seek to exclude time in reliance upon the presently cited provision, they demonstrate both that the defendant's location was unknown *and* that he was attempting to avoid apprehension or prosecution. The criteria, it must be stressed, are conjunctive. It is not enough that the People did not know where the defendant was when his attempts at

avoiding apprehension, if any, could have created no significant impediment to his return had due diligence been employed. Nor is it enough for the People to show that the defendant employed the most extraordinary devices and elaborate strategies to avoid capture when, these efforts notwithstanding, his location nevertheless became known. To permit the People the benefit of the claimed exclusion under either disjunctive application of the statutory criteria would effectively eliminate the requirement of prosecutorial diligence in the enforcement of judicial warrants, and that is a result which, as *Bolden* underscores, the statute cannot be understood to countenance.

For present purposes, it may be conceded that the defendant was "attempting to avoid apprehension or prosecution." (CPL 30.30 [4] [c].) The fact remains, however, that on June 9, 1990, just 42 days after his arraignment on the gun possession charge, the defendant, his attempts at eluding capture notwithstanding, was in fact recaptured in the 28th Precinct and sat once again at Central Booking awaiting processing for the alleged commission of several misdemeanors. Obviously, it is not tenable that the defendant's location was on this occasion unknown to the prosecutorial authorities. To the contrary, having arrested the defendant and taken him into custody there is no viable claim that the police did not know where he was. Nor, if it were legally relevant, is there a viable claim that they did not know who he was. To the contrary, based upon the information obtained at the time of the June 9, 1990 arrest, the authorities were able to elicit from the State Division of Criminal Justice Services (DCJS) a report indicating that the individual whom they held in custody had an extensive criminal history. And, although the DCJS report was generated using the name Joseph Ladson, the report indicated prominently that its subject had used various names and that he had most frequently identified himself as Joseph Kenny Ladson. Obviously, the authorities knew both where the defendant was and who he was. They simply and unaccountably failed to discover the May 14, 1990 warrant. Given the fact that the defendant's fingerprints were on file in connection with the April 27, 1990 arrest, it is hard to imagine any means by which he might have escaped identification as the subject of the May 14, 1990 warrant had reasonably thorough efforts been made. Indeed, even without his fingerprints, the defendant was demonstrably identifiable as the subject of the outstanding warrant on the basis of the pedigree information the police did obtain at the time of the

June 9, 1990 arrest, for as the record shows, on June 12, just two days after defendant's release, the People, without the benefit of any additional information, obtained a criminal history showing on its first page that the defendant was, in fact, the subject of the May 14, 1990 bench warrant.

Notably, the portion of the statute upon which the People rely nowhere permits them to exclude time simply for failure to discover the existence of an outstanding bench warrant. Certainly, the Legislature must have assumed that once a defendant's location had been ascertained, particularly in the context of a custodial arrest, his or her identification as the subject of an outstanding warrant would follow as a matter of course. As the statute implicitly recognizes, once the defendant is in custody, his attempts, if any, at avoiding prosecution are no longer relevant. The People, at that point, indisputably have the means routinely to retrieve and enforce outstanding warrants, notwithstanding the misinformation a criminal defendant may well supply.

Observing in *People v Bolden (supra)*, at 154) that "having taken the trouble to inject the new requirement of a bench warrant into the equation, the Legislature did not intend the bench warrants to be treated as empty paper symbols" the Court of Appeals went on "to adopt a construction [of CPL 30.30 (4) (c)] requiring the People to make reasonable efforts to enforce the warrants issued by the lower court Judges of this State" *(supra, at 155)*. It is thus only where reasonable efforts at a warrant's enforcement might well have been frustrated by an absent defendant's evasions that due diligence is excused as a condition of the People's claim to the statutory exclusion. This construction of the law stands in sharp contrast to this Court's present holding which essentially relieves the People from the obligation diligently to enforce bench warrants in the very circumstances in which their enforcement would be least onerous. It would be strange indeed if the law, while requiring diligence in the location and production of bench warrant subjects still at large, were at the same time to excuse the failure to retrieve and enforce a warrant respecting an identified individual already in custody. Clearly, the statute, in requiring that a defendant's location be unknown as a condition of excluding time by reason of "absence", affords no such dispensation.

It is true, of course, that in *People v Rivera* (106 AD2d 278, 280), a pre-*Bolden* case, this Court held in the context of adjudicating a speedy trial claim, that time was excludable by the People, notwithstanding the fact that the defendant, for

whom a bench warrant had been outstanding, had been in custody; the exclusion was deemed justified because of "the outright deceit practiced by this defendant over an extensive period of time, using false names and identities in an attempt to avoid responsibility for past criminal activity". Although *Rivera* might perhaps be distinguished from the matter at bar upon the ground that the deceit employed by Rivera was considerably in excess of that employed by the present defendant (Rivera had employed 14 wholly fictitious names, six different dates of birth, five different social security numbers and 12 different addresses), the cases are, I believe, in their essential aspect indistinguishable. In both instances, bench warrants respecting defendants in custody went unretreived and unenforced, and here, as in *Rivera,* the sole ground upon which enforcement of the warrant is excused is that the defendant was misleading. But, as noted, a defendant's deceit alone is not a sufficient ground upon which to rule a defendant "absent" as that term is defined in the statute. While it may seem fitting that a defendant should not benefit by his or her deception, what the statute recognizes is that the best way to prevent such undue benefit is not to rely upon the cooperation and veracity of arrestees, particularly the class of arrestees here at issue the members of which have, by hypothesis, already failed to appear in court as required, but to mandate that the People take reasonable steps reliably to retrieve and enforce outstanding warrants. And, although it might not be reasonable to expect the People to apprehend a defendant somewhere at large who is actively attempting to avoid capture, surely it is reasonable to expect that once a defendant has been captured, outstanding warrants respecting the apprehended individual will be retrieved and enforced.

Cases decided since *Rivera (supra)* have implicitly recognized that the approach taken in *Rivera* was unsound. In *People v Davis* (184 AD2d 575), the Second Department after initially stressing that "the scope of the exclusion provided for pursuant to CPL 30.30 (4) (c) depends in large part on whether the defendant's location was actually *known* during the period of his absence" *(supra,* at 577 [emphasis in original]), held squarely that "after [defendant's] incarceration, knowledge of the defendant's location must be attributed to the agents of the State *(see generally, People v Knight,* 163 AD2d 583, *affg* 140 Misc 2d 1075; *People v Greenwaldt,* 103 AD2d 933). Since the People must be deemed to have known the defendant's location during the period of time which followed his incarceration, they must be charged with that time unless they can

prove that they exercised due diligence in producing him for trial *(see, People v Knight, supra; People v Bryant,* 139 AD2d 750; *People v Billups,* 105 AD2d 795; *People v Greenwaldt, supra; People v Melendez,* 92 AD2d 904)." *(Supra,* at 577.)

The continued validity of the analysis employed in *Rivera* is also cast in doubt by *Bolden (supra),* for, as noted, *Bolden*'s construction of the statute, affirming and underscoring its requirement of reasonable efforts by the People at enforcing outstanding bench warrants, simply cannot be reconciled with an approach excusing, for speedy trial purposes, the People's failure to enforce a bench warrant against an incarcerated defendant, particularly where, as here, the defendant's location and identity have in fact been ascertained.

This Court has, of course, recently recognized that due diligence in the enforcement of an outstanding bench warrant cannot be excused by reason of a defendant's attempts at avoiding apprehension, where the defendant is already in custody. In *People v Barasso* (193 AD2d 448, *lv denied* 81 NY2d 1070), the defendant, the subject of an outstanding bench warrant, had been arrested three times, on each occasion providing a different name and birth date. Due to the misleading information furnished by the defendant and an "apparent computer error," *(supra,* at 448), the People failed to link the three cases and consequently failed to locate the defendant for the purpose of enforcing the warrant. Notwithstanding the defendant's deceit, we held that the People were still required to employ due diligence in producing him pursuant to the warrant. In so holding, we recognized, albeit implicitly, that the People were not entitled to exclude time pursuant to CPL 30.30 (4) (c) by reason of the incarcerated defendant's attempts at avoiding prosecution. The underlying decisional logic would seem to have been that, absent a showing that the People diligently, if unsuccessfully, attempted to locate the defendant, the very strong presumption, and indeed the one determinitive of the availability of the subject exclusion, must be that the location of an incarcerated defendant is known *(see also, People v Davis, supra).*

As the location of the present defendant was not merely presumptively, but actually, known, I should think it clear that the People are not entitled to the benefit of the sought exclusion. The time between the June 9, 1990 arrest and the August 1991 Bergen County arrest should, therefore, be charged to the People who would as a consequence of such charge be accountable for considerably more than the six

months they are allowed in which to ready themselves for trial.

Accordingly, the judgment of the Supreme Court, New York County (Joan Carey, J.), convicting defendant, after a jury trial, of criminal possession of a weapon in the third degree and sentencing him as a predicate felon to a term of 2 to 4 years, should be reversed, on the law, and the indictment dismissed.